**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| MICHAEL DAVID BINDER and SHARON S. BINDER, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:20-cv-01735-DCN |
| vs. | ) ) | **ORDER** |
| DEWAR NURSERIES, INC; DNI LOGISTICS, LLC; and BONNIE BEHRENS, | ) ) ) | |
| Defendants. | ) ) | |

The following matter is before the court on plaintiffs Michael David Binder ("Mr. Binder") and Sharon S. Binder's ("Mrs. Binder") (together, the "Binders") motion to compel, ECF No. 41. For the reasons set forth below, the court grants in part and denies in part the motion.

## I.  BACKGROUND

This matter arises from a May 14, 2019 automobile accident on Highway US-17 in Charleston, South Carolina, when a tractor-trailer driven by defendant Bonnie Behrens ("Behrens") collided with a vehicle driven by Mr. Binder. According to the Binders, Behrens failed to slow down or stop for traffic ahead and collided with the rear of Mr. Binders' vehicle. Behrens was an employee of defendants Dewar Nurseries, Inc. ("Dewar") and DNI Logistics, LLC ("DNI") at the time of the accident. On June 10, 2021, the Binders filed the instant action against Behrens, Dewar, and DNI (together, "defendants"), alleging that Behrens was negligent in the operation of the tractor-trailer and that Dewar and DNI are vicariously liable for Behrens's actions and directly liable for negligence, inter alia, in failing to establish and maintain adequate policies and

1

procedures and failure to train and monitor its drivers. The Binders seek actual and punitive damages in connection with Mr. Binder's pain and suffering, medical expenses, lost wages, and earning capacity, as well as for Mrs. Binder's loss of consortium.

On March 21, 2022, the Binders filed a motion to compel. ECF No. 41. On April 4, 2022, defendants responded, ECF No. 44, and on April 20, 2022, the Binders replied, ECF No. 48. On June 16, 2022, the court held a hearing on the motion. ECF No. 50. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R.

Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion."  Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III.   DISCUSSION

The Binders request an order from the court compelling defendants to fully respond to certain requests in their sixth and seventh sets of discovery requests.  As the Binders explain it, their motion to compel relates to "the inherent unfairness of Defendants asserting that Behrens's driving logs are inaccurate, and that Defendants have complied with all internal, state, and federal rules, and then withholding the documents and evidence necessary to prove and/or test those assertions."  ECF No. 41 at 3.  The Binders served their sixth and seventh sets of discovery requests after the deposition of Ed Wright ("Wright")—the Director of Safety for DNI and Dewar and their deponent under Federal Rule of Evidence 30(b)(6).  During the deposition, the Binders' counsel asked Wright several questions about Behrens's driving logs.  Wright stated in his deposition that drivers for DNI and Dewar use the "KeepTruckin" app to fulfill the Department of Transportation's requirement of an electronic logging device.  When asked about whether driving logs could be false, Wright stated, "That's why we have a system in place that is electronic.  It's not—there's no system that is 100 percent foolproof, but it's pretty darn accurate and pretty darn close."  ECF No. 41-3, Wright Dep. at 32:8–15.  The Binders then pointed out to Wright that Behrens's KeepTruckin

3

driving logs show that on May 8, 2019—six days before the accident—she went off-duty in Charlotte, North Carolina at 5:48:23 p.m.; that she began driving again at 7:29:10 p.m. 11.8 miles north of Georgetown, Kentucky; and that she went off duty at 8:30:33 p.m. that same day 7.2 miles south of Berea, Kentucky. On May 9, 2019, Behrens's log indicates that at 12:00:00 a.m. her location was 7.2 miles south of Berea, Kentucky and that she came on duty at 8:37:00 a.m. in Charlotte, North Carolina. Behrens certified these entries as true and correct. According to the Binders, these entries are relevant to the instant action because they show that Behrens violated 49 C.F.R. § 395.3(b)(2) the week of the accident. Section 395.3(b)(2), also known as the seventy-hour rule, provides that

> No motor carrier shall permit or require a driver of a property-carrying commercial motor vehicle to drive, nor shall any driver drive a property-carrying commercial motor vehicle, regardless of the number of motor carriers using the driver's services, for any period after . . . [h]aving been on duty 70 hours in any period of 8 consecutive days if the employing motor carrier operates commercial motor vehicles every day of the week.

49 C.F.R. § 395.3(b)(2).

When confronted with the logs at issue and apparent violation of the seventy-hour rule, Wright seemingly reconsidered the reliability of the KeepTruckin app and asserted that the logs were inaccurate. Wright explained that it was "[i]mpossible" for Behrens to be off duty in Charlotte at 5:48 p.m. and then be driving again in Kentucky an hour and forty minutes later. ECF No. 41-3, Wright Dep. at 103:19–104:1. Wright elaborated that "I have placed phone calls for KeepTruckin to explain that to me. Because there is no way she can make it . . . . It is impossible from 5:48 to 7:29 [p.m.] to get to Georgetown, Kentucky, unless you've got wings. And it's impossible to get back from Georgetown, Kentucky, in the next day log, back to North Carolina. So there is an anomaly there, and

I can't answer it.  But I am researching it."  Id. at 104:2–15; see also id. at 104:9–107:25.

Wright stated that he had "never seen anything like this happen" and that he was "going

to get to the bottom of" it.  Id. at 107:12–25.  Because defendants now claim that

Behrens's KeepTruckin logs are incorrect, the Binders have sought discovery related to

these logs in an attempt to evaluate the accuracy of the logs for themselves.  The Binders'

sixth and seventh sets of discovery requests are related to this issue.

Defendants contend that while the requests related to Behrens's logs may at first

appear reasonable, the issue of Behrens's logs is a red herring.  According to defendants,

the Binders have not alleged that fatigue or any physical condition of Behrens led to or

contributed to the accident.  Similarly, the Binders' complaint makes no allegation that

Behrens operated her vehicle in violation of applicable hours-of-service regulations or

that an hours-of-service violation caused or contributed to the occurrence of the accident

underlying this matter.  Defendants further explain that the evidence in the record and

publicly-available evidence confirm that Behrens did not exceed the applicable hours of

service for the trip during which the accident took place.  According to defendants,

KeepTruckin's investigative results and Wright's deposition testimony conclusively

establish that it was impossible for Behrens to be driving in Kentucky a mere one hour

and forty minutes after going off duty in Charlotte.

At the outset, the court notes that "once a claim has been stated adequately, it may

be supported by showing any set of facts consistent with the allegations in the

complaint."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562 (2007).  Defendants

have not challenged the Binders' complaint by way of a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6) for failure to state a claim, and the court has no reason

to believe that such a motion would be successful. The Binders allege in their amended complaint, now the operative complaint, that defendants were negligent "[i]n failing to establish and maintain adequate policies and procedures to mandate compliance by its drivers with statutes, laws, and regulations regarding the operation of motor vehicles, or if such policies and procedures were in place, in failing to enforce them." See ECF No. 28, Amend. Compl. ¶¶ 15–17. The Binders further allege that defendants' actions constituted negligence per se and that defendants "owed [Mr. Binder] a legal duty . . . to obey all state and federal laws related to the operation of a commercial motor vehicle." Id. ¶ 18. The Binders' attempt to prove that Behrens violated § 395.3(b)(2) is consistent with those allegations. Therefore, the Binders' requests for discovery on the issue is entirely consistent with their complaint.[1]

Moreover, although defendants present evidence suggesting that Behrens's KeepTruckin logs were inaccurate and that no seventy-hour rule violation occurred, the Binders are not required to accept that evidence as fact. The Binders are entitled to discovery to explore the accuracy of the KeepTruckin logs for themselves and challenge defendants' evidence on the matter. For example, evidence of the accuracy of other KeepTruckin log entries tends to make it more likely that the logs at issue were accurate.

---

[1] During the hearing, counsel for defendants further argued that discovery related to § 395.3(b)(2) is not proportional because the parties expect that the bulk of the litigation will relate to damages rather than establishing negligence. However, defendants have not conceded the issue of negligence, and counsel for the Binders maintains that any § 395.3(b)(2) violation is relevant to the damages calculation as aggravating circumstances. Counsel for the Binders asserts that $85,000.00 in medical expenses and upwards of $100,000.00 in lost income are at issue. Therefore, the court does not find all discovery on the matter disproportionate to the needs of the case. The court will address proportionality of specific requests on an individualized basis.

Moreover, even if Behrens's KeepTruckin logs reflect an impossibility, the Binders are entitled to discovery to determine why the logs were inaccurate and whether other entries within eight days of the accident might likewise be inaccurate so that they can recreate a more accurate picture of Behrens's hours during the week in question.  Accordingly, defendants' wholesale attempt to characterize discovery on the KeepTruckin logs as irrelevant fails.

With this background in mind, the court turns to the individual discovery requests at issue.

### A.    The Binders' Sixth Set of Discovery Requests

The Binders first request that the court compel defendants to provide full and complete responses to Discovery Request Nos. 1, 2, 5, 6, 8, 10, 12, 13, 14, and 16 of the Binders' sixth set of discovery requests.[2]  The Binders initially challenged defendants' responses to Discovery Request Nos. 7 and 15.  However, based on defendants' representations in their response, the Binders withdrew their motion as to these two requests.  Therefore, the court does not consider the parties' arguments as to those requests.

#### 1.    Discovery Request No. 1

Discovery Request No. 1 states:

1. Specifically, what is being done and by whom to investigate Defendant Behrens' driving logs as Defendants DNI Logistics, LLC and Dewar Nurseries, LLC testified to at p. 107:12-19 of the 30(b)(6) deponent's deposition.

---

[2] Curiously, the Binders do not label their requests as "Interrogatories" or "Requests for Production" in accordance with Rules 33 and 34 of the Federal Rules of Civil Procedure but rather label all as "discovery requests."  The court advises counsel to refrain from making a habit of this approach.

ECF No. 41-1 at 1.

> Defendants responded:
>
> The Defendants reached out to Keep Trucking to request information and their input regarding this issue.  Please see attached November 10, 2021 email from Keep Trucking regarding the results of the inquiry. (Bates Stamp No. DNI 301).

Id.  The Binders complain that defendants failed to fully respond to this request by specifically identifying their efforts to investigate Behrens's logs.  Defendants argue that they properly responded to this request by identifying what was done ("The Defendants reached out to KeepTruckin to request information and their input regarding this issue") and by whom ("the Defendants") with respect to their investigation of Behrens's anomalous trip at issue.  Defendants also point out that they produced an email that identified an individual named Jerry, to whom KeepTruckin's response was directed. They further fully identified this individual in response to the Binders' eighth set of discovery requests.  In their response to the instant motion, defendants add that their Rule 30(b)(6) deponent, Wright, testified that he placed phone calls to KeepTruckin for an explanation of this issue.  With that, defendants claim to have provided a full response to the Binders' inquiry and that the Binders are attempting to improperly expand the scope of this request as it is written by asking more specific questions that were not included in the original inquiry.

The Binders counter that defendants did not identify any individual in their response.  They argue that it is unclear whether Wright or another individual "reached out" to KeepTruckin.  The Binders additionally complain that defendants did not state that "Jerry" contacted KeepTruckin or what Jerry did in connection with the investigation.  Because Wright stated during his deposition that he called KeepTruckin,

8

but indicated that he had not received a response at the time of his deposition, the Binders argue that it is unclear if Wright followed up again or if someone else contacted KeepTruckin.

The court finds defendants' response vague, evasive, and lacking sufficient specificity to be considered complete. The court compels defendants to respond fully to the discovery request and specify the individuals that reached out to KeepTruckin and the steps each individual took in investigating the logs. During the hearing, counsel for defendants confirmed that Wright's call(s) and the one email from "Jerry" constitute their only investigative efforts to date. The court nevertheless orders defendants to provide an affidavit to this effect to fully resolve the matter.

### 2. Discovery Requests Nos. 2, 12 and 13

In Discovery Requests Nos. 2, 12 and 13, the Binders seek data regarding Behrens's logs and trips from the KeepTruckin account, including trip printouts and location history. Defendants complain that the requests are not limited in time frame and purport to seek documents for the entirety of Behrens's employment with defendants. Defendants previously produced copies of Behrens's driver logs for the time frame of May 7 through May 14, 2019—eight days prior to and including the date of the May 14, 2019 accident. Although the Binders did not initially seek production of materials for a more expanded time frame, defendants began seeking such materials after Wright's deposition. The Binders explained that a larger time frame is needed as a result of the Binders' position that Behrens's logs are inaccurate, which contradicts Wright's testimony that the KeepTruckin system is generally accurate.

Defendants assert that this discovery should not be allowed because they have already explained the impossibility of the driving event on May 8 and May 9, 2019, but, as set forth above, the Binders are not required to simply accept defendants' theory. During the hearing, counsel for defendants also argued that the request is overly burdensome, as it will require manual review and screenshots of the requested data. Behrens was employed by defendants for only six months, and the court is not entirely convinced that production of the documentation would be unreasonably burdensome. Moreover, a party "may not excuse itself from compliance with [discovery] . . . by utilizing a system or record-keeping which conceals rather than discloses relevant records, or makes it more difficult to identify or locate them, thus rendering the production of documents an excessively burdensome or costly expedition." Ashmore v. Allied Energy, Inc., 2016 WL 2898007, at *4 (D.S.C. May 18, 2016) (quoting Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976)).  Because parties choose their own record-keeping system to access information in the ordinary course of business, they should be held responsible for difficulties encountered in producing the same information in discovery.  Stout v. Wolff Shoe Co., 2007 WL 1034998, at *2–3 (D.S.C. Mar. 31, 2007); Columbia Chems. Co. v. AIG Specialty Ins. Co., 2015 WL 12755711, at *5 (N.D. W. Va. Sept. 18, 2015) (holding that the corporate defendant could not "shirk its discovery obligations because the filing system it created makes finding documents an arduous task").  During the hearing, the parties disputed whether KeepTruckin itself can easily download all the requested data, and counsel for the Binders explained certain difficulties the Binders encountered in subpoenaing KeepTruckin for the same.  As a preliminary compromise, the court orders defendants to contact KeepTruckin to

10

determine whether it would be amenable to downloading and providing the data at issue

with defendants' consent.[3]  If this approach does not resolve the issue, the parties may

request further consideration from the court on the matter.

### 3. Discovery Requests Nos. 5 and 6

Discovery Requests Nos. 5 and 6 seek documents regarding Behrens's pay,

including pay and dispatch records.  The requests and respective responses are as

follows:

> 5. Produce Defendant Behrens' pay records for the time she was employed
> by Defendants including all documents and details supporting the basis for
> her pay.
>
> **RESPONSE:** The Defendants object to this request pursuant to Rule 26,
> FRCP, on the grounds that it is harassing, overly burdensome, unduly
> invasive, not reasonably limited in time or scope and not proportional to the
> needs of the case in that it seeks information unrelated to the claims and
> defenses in this case, in that this request seeks personal and confidential
> materials which have no bearing on this case, particularly as Ms. Behrens
> is not making a claim for personal injury or financial and/or other monetary
> loss and, accordingly, have no bearing on the claims and/or defense in this
> action.
>
> 6. Produce all dispatch records showing the details of Behrens' pay,
> including time of deliveries and time of departures.
>
> **RESPONSE:** See attached Delivery Route Schedules and Bills of Lading
> for Bonnie Behrens (Bates Stamp No. DNI 248-257) previously produced
> in response to Plaintiffs' Request for Production No. 26 on July 23, 2021.
> The Defendants have performed a search of their records and have not
> located any additional documents responsive to this request. The
> Defendants reserve the right to supplement and/or amend this response as
> needed and as discovery progresses.

ECF No. 41-1 at 3.

---

[3] Defendants shall include counsel for the Binders on all such
communications to avoid further disputes regarding defendants' veracity and
candor in its discovery efforts.

Defendants argue that they have performed a search of their records and have not located any additional documents responsive to these requests. Notably, in their initial responses to these discovery requests, defendants only stated that they had not located any further responsive documents to Discovery Request No. 6—they did not say the same for Discovery Request No. 5. However, defendants have since confirmed that they likewise have no additional documents responsive to Discovery Request No. 5. Therefore, they argue that the motion is moot as to these requests because defendants are not in possession of the requested documents. The Binders argue that defendants have not produced any pay records for Behrens, and it is unclear whether defendants have possession, custody, or control of any such records—particularly because defendants only stated in their responses that documents are not in their "possession."

To the extent defendants have any pay records for Behrens in their physical possession, custody, or control, they must produce the same for the entirety of her employment. See Grayson v. Cathcart, 2013 U.S. Dist. LEXIS 50011, at *11 (D.S.C. Apr. 8, 2013) ("Control does not require legal ownership or actual physical possession of documents at issue; rather 'documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'") (quoting Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 515 (D. Md. 2009)). Defendants' response that they do not have any pay records for Behrens strains credulity. The court construes this request to include, inter alia, any Internal Revenue Service W-2 or 1099 forms for Behrens, as well as any copies of paychecks. If defendants have no documents to produce, defendants shall provide an affidavit to that effect detailing the efforts they took to search for the materials. Defendants cannot

indefinitely prolong discovery by simply noting that they have not yet located the materials. They must affirmatively state whether they have responsive documents or not. "A response to a request for production of documents which merely promises to produce requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b) and, therefore, pursuant to Rule 37(a)(4) is treated as a failure to answer or respond." Simpson v. Greenville Transit Auth., 2006 WL 8445559, at *2 (D.S.C. Apr. 27, 2006) (internal quotation marks and citation omitted); see also Kinetic Concepts, Inc. v. CovaTec Inc., 268 F.R.D. 226, 246 (M.D.N.C. 2010) ("[T]he promise to continue to search for records and supplement one's responses in the future, is a completely inadequate response to a long standing discovery request.") (internal quotation marks and citation omitted). Therefore, the court compels defendants to provide a complete response or affidavit within thirty days of the date of this Order.

### 5. Discovery Request No. 8

Discovery Request No. 8 states:

8. Produce any statement(s) Defendant Behrens provided.

**RESPONSE:** See DNI 158 previously produced. Defendants are not in possession, custody, or control of any additional documents responsive to this request.

ECF No. 41-1 at 4.

With respect to Discovery Request No. 8, defendants assert that they have properly responded to confirm that other than the document previously produced, they are not in possession, custody, or control of any statements provided by Behrens. The Binders take issue with this response because Behrens testified in her deposition that she

gave a statement to the insurance company on the day of the wreck.  Because the statement was given to defendants' insurer, the Binders argue that defendants are in possession, custody, or control of this statement.  ECF No. 41 at 16 (citing <u>Henderson v. Zurn Indus.</u>, 131 F.R.D. 560, 567 (S.D. Ind. 1990) ("A party may . . . be found to have control of documents turned over to his insurer. . . .")).  Defendants counter that Behrens did not testify that she gave a <u>recorded</u> statement—in other words, a statement that can be produced.  Therefore, they maintain that the Binders have no basis to challenge defendants' response that they do not have any other documents to produce.  Still, the Binders argue in their reply that defendants have failed to state that no such statement exists or that they sought the statement from the insurance company but were unable to obtain it.  During the hearing, counsel for defendants confirmed that no recorded statement exists.  Defendants' response is consistent with this confirmation and clearly states that they do not have possession, custody, or control of any other responsive materials, and the court cannot compel a party to produce documents it does not have and that does not exist.  No further response is needed, and the court denies this request.

### 6.  Discovery Request No. 10

Discovery Request No. 10 asks that defendants "[p]roduce the Keep Truckin manual that was provided to Defendant Behrens at the time she was hired by Defendants."  ECF No. 41-1 at 4.  Defendants responded, "See DNI 299-301.  Defendants are not in possession, custody, or control of any other documents responsive to this request."  <u>Id.</u>  Defendants maintain that they fully responded to the request for the KeepTruckin manual provided to Behrens when she was hired by citing three documents and confirming they are not in possession, custody, or control of any other documents.

14

The Binders counter that they are unable to ascertain from defendants' response whether additional responsive documents exist. The Binders seek confirmation that the provided document is the only KeepTruckin manual Behrens received when she was hired. The court fails to see how the confirmation the Binders seek is unclear from defendants' response. However, out of an abundance of caution, the court asked counsel for defendants to confirm during the hearing that they have no other responsive documents in their possession, custody, or control. Counsel so confirmed, and the court therefore denies this request.

### 7.  Discovery Request No. 14

In Discovery Request No. 14, the Binders seek production of defendants' Preventability Analysis; defendants assert no such document exists. Defendants argue that they have properly responded to the Binders' request by indicating they are not in possession, custody, or control of responsive documents. The Binders claim that Wright indicated that a preventability analysis was completed for the accident by defendants. Defendants counter that Wright actually testified that he could not confirm whether the accident was preventable because "that's to be decided between . . . the attorneys." ECF No. 44-5, Wright Dep. at 64:18–65:8. Defendants claim "there was some misunderstanding regarding the term 'preventability'—and upon confirmation of the same, [d]efendants confirmed that they are not in possession, custody and/or control of documents responsive to this request." ECF No. 44 at 14. The Binders dispute this assertion, arguing that the document clearly exists because Wright plainly stated "[t]here was an analysis done," and he "read that analysis." ECF No. 44-5, Wright Dep. at 71:2–24.

The court agrees with the Binders that Wright clearly testified that a preventability analysis exists in this case.  See ECF No. 44-5, Wright Dep. at 63:11–23. Wright was specifically asked if preventability analyses are done by defendants, and Wright answered, "It depends on the case, and there was one done in this case."  Id. at 63:11–14.  When asked what the preventability analysis said in this case, Wright responded, "I have no idea.  I don't have that information in front of me, but there was one done."  Id. at 63:18–23.  It very well may be that Wright was mistaken in his testimony.  However, to resolve that issue, the court orders defendants to provide an affidavit from Wright on the matter, as well as an affidavit stating the efforts defendants took to resolve the misunderstanding and search for responsive documents.

### 8.   Discovery Request Nos. 16

In Discovery Request No. 16, the Binders seek production of the supporting documentation Wright used to create a timeline that he used in his deposition.  The Binders recognize that the timeline itself is privileged but argue that defendants should be required to provide the documents he used to create it.  Defendants do not specifically address the Binders' requests for supporting documentation in their briefing on the motion to compel.  During the hearing, counsel for defendants represented that defendants would provide those documents.  Accordingly, the court compels defendants to fully respond with the documents used to create Wright's timeline within thirty days of the date of this Order.

### B.  The Binders' Seventh Set of Discovery Requests

The Binders' seventh set of discovery requests relate to defendants' use of the KeepTruckin app.  The Binders challenge defendants' response to every request in this set and ask that the court compel defendants to fully respond to all.

### 1.  Discovery Requests Nos. 1, 2 and 3

In Discovery Requests Nos. 1, 2 and 3, the Binders seek: (a) a copy of all contracts between KeepTruckin and defendants in effect from January 1, 2019 to January 1, 2020; (b) a copy of all subscription plans and features KeepTruckin offered defendants during this period; and (c) a copy of the subscription plan(s) and features chosen by defendants during this period.  In their response to the Binders' motion, defendants state that they "will produce a copy of the requested materials which were applicable to the May 14, 2019 accident upon receipt and/or location of the same."  ECF No. 44 at 17. The Binders confirmed that they seek the materials applicable to May 14, 2019, so defendants' proposed production would be acceptable to the Binders, but the Binders complain that no such production has occurred.  Defendants argue that the Binders have no valid basis for seeking an order compelling discovery in response to these requests in light of this agreement.  However, again, as the Binders point out, "a response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b)."  Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 173 F.R.D. 651, 656 (D. Md. 1997).  During the hearing, the parties indicated that defendants have since produced additional documents, but counsel for the Binders maintained that they had yet to receive all responsive documents.

Therefore, the court compels defendants to fully respond within thirty days or provide an affidavit confirming that all responsive documents have been produced and outlining the steps defendants took to search for responsive documents.

### 2. Discovery Request No. 4

Discovery Request No. 4 and defendants' response are reproduced below:

4. Produce a copy of all KeepTruckin manuals and training materials provided to Defendants and its drivers.

**RESPONSE:** As it relates to the requested materials applicable to Bonnie Behrens, see Response No. 10 to Plaintiffs' Sixth Set of Discovery Requests and DNI 299-301. The Defendants object to the remainder of this request on the grounds that it is overly broad, harassing, unduly burdensome, not reasonably limited in time or scope, not proportional to the needs of the case, and not reasonably calculated to lead to the discovery of admissible evidence in that it seeks information for an unlimited time inclusive of dates remote to and subsequent to the accident at issue in this case, seeks information unrelated to the subject accident, seeks information individuals who were not involved in and not witnesses to the subject accident, and which, therefore, has no bearing on the occurrence of the accident and/or the claims and defenses in this case.

ECF No. 41-2 at 3.

Defendants maintain that this request for KeepTruckin manuals and training materials is duplicative and that they have properly responded to identify the only responsive materials applicable to Behrens.  If DNI 299–300 were the only KeepTruckin manuals and training materials provided to defendants and its drivers (not just Behrens), the Binders accept the response as complete.  However, the Binders point out that this request is not limited to documents defendants provided to Behrens but also includes documents provided to <u>any</u> of defendants' drivers.  The Binders complain that defendants' response, as worded, leaves open whether defendants provided other drivers additional KeepTruckin manuals or training materials that they did not provide Behrens.

18

This information is relevant, the Binders argue, because they allege that defendants negligently trained Behrens.

The court agrees with the Binders that defendants' response is not fully responsive to the Binders' request and is ambiguous as to the issues that the Binders raise. As such, the court compels defendants to expand their production to include documents provided to other drivers or confirm by affidavit that no other responsive documents exist within thirty days.

### 3. Discovery Request No. 5

Discovery Request No. 5 seeks production of "all communications, whether electronic, paper, or phone call, related to any inquiry by Defendants as to the accuracy of KeepTruckin Electronic Logs and KeepTruckin ELD [(electronic logging device)] between Defendants and KeepTruckin." Id. at 4. In response, defendants produced the email from KeepTruckin regarding the driving event of May 8, 2019 at 7:29:10 p.m. See ECF No. 41-6. The Binders complain that defendants did not, however, produce any communication by "Jerry," even though "Jerry" clearly "reach[ed] out" to KeepTruckin regarding the May 8 driving event. ECF No. 41-6. Moreover, the Binders explain that their request is not limited to Behrens's logs or the driving event of May 8, 2019. Rather, they seek all defendants' communications with KeepTruckin regarding the accuracy of any of their drivers' logs. Defendants argue that this request is akin to "evidence of other accidents," which may not be admissible in evidence at trial. Defendants further argue that the request is improper because it is not limited to issues that are "substantially similar" to the issues in this case and it is not limited in time frame. Moreover, defendants state that, in any event, "a search of its records has, to date, uncovered no

other similar inquiries made to KeepTruckin other than that regarding the May 8, 2019 anomaly." ECF No. 44 at 19. The Binders counter that the matter before the court today is discoverability—not admissibility. The Binders also do not accept defendants' assertion that they have not uncovered similar inquiries because it is unclear how defendants define "similar inquiries."

The court agrees with the Binders that defendants have failed to show that communications with KeepTruckin regarding the accuracy of other drivers' logs are not discoverable. The cases cited by defendants regarding the admissibility of evidence of other accidents are unpersuasive. It is well-established that, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." See Fed. R. Civ. P. 26(b)(1); see also Donovan v. Wal-Mart Stores, Inc., 2012 U.S. Dist. LEXIS 102335, at *6–7 (D.S.C. July 24, 2012) (granting motion to compel in part and noting that "[t]he court is not required, at this stage of the litigation, to make any determination of the actual admissibility of any other incidents."); Bennett v. Segway, Inc., 2011 U.S. Dist. LEXIS 120955, at *5–8 (W.D.N.C. Oct. 19, 2011) ("The same concerns regarding the prejudicial nature of the evidence [of other accidents admitted at trial] . . . is not present during discovery"). Moreover, the information requested is not merely evidence of "other accidents." The information the Binders request is relevant to the accident at issue, given defendants' contention that Behrens did not drive in violation of 49 C.F.R. § 395.3(b)(2) because there is an error in her logs. As the court already explained, the Binders are entitled to discovery to challenge that explanation and the accuracy of the KeepTruckin app. The court does not find the timeframe overly broad, given that counsel for defendants confirmed during the hearing that defendants have only contracted to use

20

the KeepTruckin app since 2018. Therefore, the court orders defendants to produce all of defendants' communications with KeepTruckin related to the accuracy of other drivers' logs or provide an affidavit stating that no other documents exist. Also, as previously explained, the Binders' response that no additional responsive documents have been discovered to date is insufficient. The Binders shall provide an affidavit confirming that no responsive documents exist and outlining the steps they took to locate responsive materials.

### 4. Discovery Request No. 6

Discovery Request No. 6 seeks data from the KeepTruckin platform for Behrens, as well as for vehicles 477578 and 1R51410. Defendants state in their response in opposition to the motion to compel that they have "properly responded" to this request "as it relates to Bonnie Behrens for the applicable time frame outlined herein," presumably May 7 through 14, 2019. ECF No. 44 at 21. Defendants further state that they are willing to supplement their response if additional documents for Behrens for this time-period are discovered. The Binders confirm that defendants produced some documents dated from May 4 through May 9, 2019 relating to Behrens. However, the Binders requested documents for a more expansive time frame and for the two vehicles, which have not yet been provided. The Binders argue that defendants' agreement to supplement is insufficient because it is overly limited in scope and subjects the Binders to an indefinite discovery period.

Again, the court agrees with the Binders that they are entitled to the KeepTruckin data for more than the eight days prior to and including the accident. The information is relevant to the defendants' contention that Behrens' logs indicating a violation of the

seventy-hour rule are inaccurate.  The court has no reason to find these requests disproportionate to the needs of the case.  Again, as the Binders explain it, Behrens was only employed with defendants for six months, and any burden in producing her data is a function of defendants' own record-keeping platform.  It is unclear how much data defendants have for the two vehicles at issue, and it is defendants' responsibility to demonstrate to the court that the request for those vehicles is unduly burdensome. Moreover, at this point in the discovery process, defendants cannot continue to delay production with promises to supplement.  Still, because KeepTruckin may have the functionality to more efficiently pull data from its platform, the court orders the parties to confer with KeepTruckin to request that it produce the data at issue with defendants' consent.  To the extent KeepTruckin cannot or will not so provide, the parties may request further intervention by the court.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion to compel and **COMPELS** defendants to fully respond to the discovery requests in accordance with this Order within thirty days. **AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 23, 2022**
**Charleston, South Carolina**

22